

| | |
|---|---|
| DISTRICT COURT,<br>DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: November 13, 2020 2:50 PM<br>FILING ID: C08BCF747BB5A<br>CASE NUMBER: 2020CV33870 |
| Plaintiff:     POWER ENGINEERING CO.<br><br>v.<br><br>Defendant:   FEDERAL INSURANCE COMPANY | ▲COURT USE ONLY ▲ |
| *Attorneys for Plaintiff:*<br>Sean B. Leventhal, #42371<br>Jonathan S. Sar, #44355<br>Richard Daly, # 51941<br>John Scott Black, # 50440<br>Daly & Black, P.C.<br>2211 Norfolk Street, Suite 800<br>Houston, TX 77098<br>Phone: (713) 655-1405<br>Fax:    (713) 655-1587<br>Email: sleventhal@dalyblack.com<br>          jsar@dalyblack.com<br>          rdaly@dalyblack.com<br>          jblack@dalyblack.com | Case Number:<br><br>Division:<br><br>Courtroom: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Power Engineering Co. ("Plaintiff"), through its attorneys, Daly & Black, P.C., for its complaint against Federal Insurance Company ("Chubb"), states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff is a Colorado corporation with a principal office street address of 2525 South Delaware Street, Denver, CO 80223.

2.      Plaintiff operates a business for the hard chrome plating of industrial crankshafts.

3.      Plaintiff is the owner of the subject property located at 2525 South Delaware Street, Denver, CO 80223 (the "Property").

4. The Property is a commercial property with a total roof area of approximately 65,000 square feet comprised of several roofing types, including TPO membrane, modified bitumen, metal, and spray polyurethane foam ("SPF").

5. At all relevant times, Plaintiff is and was the beneficiary of a commercial property insurance policy covering the Property issued by Chubb (the "Policy"). The Policy number is 3602-71-67 DEN.

6. Chubb is a foreign corporation doing business in Colorado with a principal office street address of One American Square, Suite 2600, Indianapolis, IN 46282. Chubb's registered agent in Colorado is CT Corporation System, which has a street address of 7700 E. Arapahoe Road, Suite 220, Centennial, CO 80112-1268.

7. Venue is proper in this district pursuant to C.R.C.P. 98 because Plaintiff is and was located in Denver County at all times relevant to this case, and because all activities alleged herein occurred in Denver County.

8. All of the acts described in this Complaint occurred in the State of Colorado under Colorado law, and involve an insurance policy governed by Colorado law.

9. This Court has personal and subject matter jurisdiction over this case pursuant to Colo. Rev. Stat. §§ 13-1-124 1(a), (b), and (c).

**GENERAL ALLEGATIONS**

10. The Policy provides coverage for direct physical loss or damage to the Property caused or resulting from specified perils, including windstorm and hail.

11. The Policy generally provides coverage for damage to the Property on a replacement cost basis.

12. During the Policy period from December 31, 2015 to December 31, 2016, the limit of such replacement cost coverage was $3,665,000 and the deductible was $2,500.

13. Pursuant to the Replacement Cost Basis provision of the Policy, among other things, Chubb is required to pay for the cost to repair or replace the damaged property, without deduction for physical deterioration or depreciation.

14. Additionally, the Policy generally provides coverage for increased costs incurred to comply with ordinances or laws in effect at the time of loss that regulate zoning, land use, or construction.

15. The Policy does not contain a "cosmetic" exclusion for metal roofing; i.e., the Policy covers hail damage to the Property's metal roof regardless of whether the damage is "functional" or "non-functional."

16. Upon information and belief, the Property was insured by Chubb under the Policy during 2017, 2018, 2019, and 2020, and the terms of the Policy were materially similar during such coverage periods. The Property is insured by Chubb under the Policy as of the date of the Complaint.

17. On or about July 15, 2016, a severe hail, wind and rain storm struck the Denver, CO area. Per hail data obtained on behalf of Chubb, estimated 1.4-inch hail fell within one mile of the Property.

18. The Property was also impacted by large hail on multiple dates during the coverage period(s) subsequent to July 15, 2016, including June 19, 2018, when a severe hail, wind, and rain storm struck the Denver, CO area. Per hail data obtained on behalf of Chubb, estimated 2.0-inch hail fell within one mile of the Property on June 19, 2018.

19. During the course of these storms, the Property was severely damaged by hail and wind. The damage included damage to the Property's roof system.

20. Plaintiff filed a property damage claim with Chubb. Chubb assigned claim number 040518033856 to the claim.

21. Chubb retained an outside adjusting company, Grecco Construction Consultants, to adjust the claim.

22. On or about October 23, 2018, Chubb engaged an engineering company, EFI Global, to inspect the Property for hail damage and to determine the age of any such damage.

23. On or about October 29, 2018, Jon Friedman, P.E. with EFI Global inspected the Property and observed extensive hail damage to the Property's roofing system. Also present at the inspection were representatives of Grecco Construction Consultants, Plaintiff, and Plaintiff's roofing contractor.

24. Mr. Friedman prepared a report dated November 14, 2018 in which he concluded, among other things, that:

   a. "The ISO board backing for the TPO roof covering the office building was damaged by hail stone impact and the damage is attributable to a June 19, 2018 hail event. The observed hail damage warrants replacement of the TPO membrane and ISO insulation board."

   b. "No damage was observed to the modified bitumen roof system covering the production buildings."

   c. "The small diameter tears and indentations observed on the SPF system over a portion of the production buildings were caused by hail impact. The hail damage to the SPF is attributable to one or more of the hail events which have occurred at the subject property since the roof was installed. The damage observed warrants the removal and replacement of the SPF roof system down to the decking."

   d. "The small diameter indentations observed on the metal panel roof system over the east side of the production building are consistent with hail impact. It is

probable that the dents into the surface of the metal panels occurred during hail events in 2014 and/or 2015. The damage observed warrants the replacement of the metal panel roof system on the east side of the production building. The dents into the surface of the metal panels could have resulted from one or more hail events containing hail stones larger than 1 inch diameter." Mr. Friedman reasoned: "It is EFI's experience that hail stone with less than 1-inch diameter do not have the energy required to create dents in metal panel roofs. There have been two hail storms with hail stones greater than 1-inch since 2009, one occurred on June 4, 2015 and the other occurred on May 20, 2014. Thus, the hail damage to the metal roof panels is attributed to hail events in 2014 and/or 2015." This analysis ignores four subsequent dates in the cited weather data (June 24, 2015; June 28, 2016; July 15, 2016; and June 19, 2018 (the date of the storm that Mr. Friedman concluded likely damaged the TPO roof)) on which the estimated maximum hail size within one mile of the Property was 1-inch or greater.

e. "No damage was observed to the metal panel roof system covering the west side of the production buildings."

f. "The indentations observed to the HVAC cooling fins are due to both hail impact and mechanical means. Combing of the indented fins is recommended, as well as evaluation of the units by a HVAC professional."

g. "The indentations observed in the soft metal ventilation covers are due to hail impact. Replacement of the ventilation covers is warranted."

25.   Mr. Friedman re-inspected the Property on November 19, 2018 and prepared a Supplemental Report dated January 3, 2019, the stated purposes of which were to (a) "Determine if

5

there is any code upgrade requirements that would apply to the repairs, which were deemed necessary in the initial report due to hail damage on the roof of the building which occurred on July 15, 2016 [Date of Loss (DOL)]"; and (b) "If code upgrade requirements apply to the recommended repairs, comment on how those upgrade requirements will change any like kind and quality replacement that is being recommended."

26. Additionally, efforts were made to determine the which City and County of Denver code requirements would apply to the necessary repairs, and how those requirements would affect the repairs. On or about December 13, 2018, representatives of the City building department, Plaintiff's contactor, Grecco, and Mr. Friedman met at the Property to discuss code issues. They met again at the City office on December 19, 2018.

27. Mr. Friedman's January 3, 2019 supplemental report restated the conclusions described above and indicated whether there were any changes. Mr. Friedman made the following changes to his conclusions in bold:

    a. "No damage was observed to the modified bitumen roof system covering the production buildings. **Based on the findings of the re-inspection, it was determined that approximately 2,700 sf of the west gable slope and 2,700 sf of the east gable slope at the south end of the roof was covered with a mod-bit membrane. a. This area of the mod-bit roof has hail impact damage. b. The damage to the mod-bit roof on the west and east gable slope at the south end of the roof warrants removal and replacement with like kind and quality including minimum R-30 insulation to conform with City code requirements.**"

    b. "The small diameter indentations observed on the metal panel roof system over the east side of the production building are consistent with hail impact. It is

6

probable that the dents into the surface of the metal panels occurred during hail events in 2014 and/or 2015. The damage observed warrants the replacement of the metal panel roof system on the east side of the production building. **The damage is considered non-functional."**

28. Presumably based on Mr. Friedman's supplemental report, Chubb issued a check to Plaintiff dated January 28, 2019 in the amount of $446,304.07.

29. During the course of adjusting the claim, Grecco Construction Consultants prepared numerous damage estimates, as follows:

| Date Inspected | Date Entered | Date at the Bottom of the Estimate | Replacement Cost Value | Code Upgrade Paid When Incurred |
|---|---|---|---|---|
| October 29, 2018 | November 2, 2018 | January 11, 2019 | $448,804.07 | $45,381.87 |
| October 29, 2018 | November 2, 2018 | October 9, 2019 | $585,748.34 | $159,583.68 |
| October 29, 2018 | November 2, 2018 | November 26, 2019 | $553,241.54 | $159,488.36 |
| October 29, 2018 | November 2, 2018 | February 21, 2020 | $553,968.69 | $159,488.36 |

30. Plaintiff signed a Sworn Statement in Proof of Loss dated June 24, 2019, which indicated hail/wind damage resulting from a July 15, 2016 storm in the amount of $3,590,289.60. Such amount was based on the estimate prepared by the public adjusting company retained by Plaintiff, Premier Claims.

31. Upon information and belief, the Premier Claims estimate and Sworn Statement and Proof of Loss were provided to Chubb in approximately June 2019.

32. The Premier Claims estimate indicated that the cost to replace the Property's roof system (gable roof, metal roof, flat roof) was $1,013,549.86, not including general conditions and overhead and profit.

33. General conditions and overhead and profit are reasonable items to include in the cost to repair the damage to the Property, and such items were included in Grecco Construction Consultants' estimates.

34. Chubb sent a letter to Premier Claims dated June 27, 2019, in which Chubb stated, among other things, that it had not yet had a reasonable amount of time to review the documentation provided and re-inspect the property, and that it was coordinating schedules with its experts to set up an onsite meeting.

35. Chubb sent another letter to Plaintiff dated August 9, 2019, in which Chubb stated, that it wanted to make Plaintiff aware of "particular areas" of the Policy that "might apply under these circumstances. This claim was filed on June 6, 2018 for a hail storm that occurred on July 15, 2016. This time line is outside the policy's request of 90 days to notify us of a loss." "As of today, our investigation of your claim is ongoing and we have yet to make a determination as to what coverage benefits we will be able to extend related to the loss scenario."

36. On or about August 15, 2019 and August 22, 2019, additional inspections took place at the Property. In attendance during these inspections were representatives of Grecco Construction Consultants, Chubb, Construction Analytics (a new engineering company retained by Chubb), EFI Global, Premier Claims, Plaintiff's roofing contractor, and Plaintiff.

37. Mr. Conrad Kawulok of Construction Analytics prepared an Inspection & Assessment Report – Scope of Repairs dated September 10, 2019. Mr. Kawulok's findings can be summarized by the following diagram that he prepared:



38.     Mr. Kawulok's recommendation was to supply the "Scope of Repairs" portion of his report to "experienced and professional contractors, for the purpose of obtaining bids to perform the work."

39.     Grecco Construction Consultants prepared the October 9, 2019 estimate identified above "based upon" Mr. Kawulok's report.

40.      Chubb sent a letter to Premier Claims dated October 10, 2019, in which it attached the October 9, 2019 estimate and indicated that it had "issued the agreed payment of $136,944.27 . . . which includes application of the policy's $2,500 deductible."

41.     Such amount was paid by check dated October 11, 2019, which indicated that it was "In Settlement of Supplement Payment Based on Updated Scope."

42.     Chubb sent a letter to Premier Claims dated December 4, 2019. Among other things, Chubb stated: "Based on the inspection, additional investigation and research of this claim, and your correspondence dated October 28, 2019 noting alligatoring and blisters to the roof, we must outline

9

that the policy does not provide coverage for damages that are the result of faulty construction, wear, tear, and/or deterioration. Your policy specifically excludes damages that are the result of faulty, inadequate or defective planning, design, specifications, construction, maintenance, and materials. In addition, the policy excludes damages that are the result of wear, tear, and/or deterioration. Therefore, your policy will not be providing coverage for the alligatoring and blisters to the roof."

43. Chubb sent a separate letter to Premier Claims also dated December 4, 2019. The letter began with the general note that "the policy has allowed for and owes for like kind and quality repairs of covered damaged items. Upgrades and installation of materials/coatings not present at the time of loss or damaged due to the cause of loss are not covered under the policy." The letter also addressed several issues presented by Premier Claims.

44. Chubb's December 4, 2019 letter misrepresents the Policy's replacement cost and "code upgrade" coverages.

45. Chubb sent a letter to Premier Claims dated January 3, 2020, in which Chubb addressed several additional issues presented by Premier Claims.

46. Premier Claims sent a letter to Chubb dated January 15, 2020 in which Premier Claims attempted to clarify code requirements applicable to replacement of the Property's roof system and identify repairs to the Property's HVAC components and unbonded roof coating that needed to be addressed in the scope of work.

47. Chubb sent a letter to Premier Claims dated March 9, 2020 in which Chubb purported to "address a few of the inaccuracies" in Premier Claims' January 15, 2020 letter.

48. Chubb did not provide any additional payments for damage following its $136,944.27 payment on or about October 10, 2019, and Chubb continues to hold back $159,583.68 for "code upgrade" amounts on the basis that such amounts are paid when incurred.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

49. Plaintiff realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

50. A contract of insurance existed between Chubb and Plaintiff; namely, the Policy.

51. The Policy provides replacement cost coverage, which, according to Chubb, pays the cost of repair or replacement, without a deduction for deprecation, subject to the Policy's limit of coverage.

52. The Policy requires Chubb to pay replacement cost benefits for covered losses.

53. The Policy requires Plaintiff to pay insurance premiums in exchange for replacement cost coverage, which Plaintiff did.

54. Hail and wind storm damage is a covered loss under the Policy.

55. The weather event(s) and the damage caused by such weather event(s), which are described above, constitute a covered loss under the Policy.

56. Chubb's estimates, which indicated the amount Chubb was willing to pay in replacement cost benefits, did not reflect the actual, necessary, and reasonable cost of repair or replacement to the Property for covered losses. Chubb's estimates were unreasonable.

57. Without limitation, Chubb's estimates unreasonably provided for replacement of only a portion of the Property's roof system that was damaged by hail and needed to be replaced.

58. Chubb's actual cash value payment to Plaintiff was based on an inadequate, unreasonable estimate.

59. Chubb did not pay what the Policy required, including because Chubb determined, without a reasonable basis, that certain damaged portions of the Property were not damaged by hail and/or were not damaged on the assigned date of loss, that certain required repairs were not required, and that certain covered repairs were not covered by the Policy's "code upgrade" coverage.

60. Such failure, among others, constitutes a breach of contract.

61. As a result of Chubb's actions and/or inactions equating to a breach of contract, Plaintiff sustained damages in an amount to be proved at trial.

### PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (VIOLATION OF C.R.S. 10-3-1115 AND 1116)

62. Plaintiff realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

63. At all times pertinent hereto, the following statute of the state of Colorado was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

(1) (a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

64. C.R.S. §10-3-1116 provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees, court costs, and two times the covered benefit."

65. Among other things, Chubb unreasonably delayed or denied payment of insurance benefits owed to Plaintiff by:

    a. failing to include in its estimate actual, necessary, and reasonable funds to repair and/or replace damaged portions of the Property caused by the weather event(s) described above;

    b. conducting an unreasonable investigation that resulted in the unreasonable estimates described above;

    c. conducting an unreasonable investigation that effectively put the burden on Plaintiff and its public adjuster to adjust Plaintiff's own claim;

    d. unreasonably relying on its experts' findings, which were highly inconsistent and often inscrutable; and

e. other conduct to be discovered in the course of these proceedings.

66. Chubb unreasonably denied and delayed payment to Plaintiff in violation of C.R.S. §10-3-1115.

67. Chubb is subject to the provisions of C.R.S. §10-3-1116 for double damages, court costs, and attorney fees in addition to those claimed elsewhere in this Complaint.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for damages against Chubb as follows:

a. Damages for breach of contract, including the value of benefits Plaintiff was entitled to receive under the Policy that were not provided; damages for delayed payment; consequential damages; and reasonable interest on delayed payment;

c. Double damages, court costs, and reasonable attorney fees incurred in prosecuting this action pursuant to C.R.S. §10-3-1116;

d. An award of pre- and post-judgment interest;

e. Costs and expenses; and

f. Such other and further relief as this Court may deem just, equitable or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

[SIGNATURES ON FOLLOWING PAGE]

Respectfully submitted November 13, 2020.

                                                By:    */s/ Jonathan S. Sar*_____
                                                       Richard Daly
                                                       John Scott Black
                                                       Sean B. Leventhal
                                                       Jonathan S. Sar
                                                       Daly & Black, P.C.
                                                       2211 Norfolk Street, Suite 800
                                                       Houston TX 77098
                                                       Phone Number: 713-655-1405
                                                       Fax Number: 713-655-1587
                                                       Email: rdaly@dalyblack.com
                                                                 jblack@dalyblack.com
                                                                  sleventhal@dalyblack.com
                                                                  jsar@dalyblack.com
                                                                 ecfs@dalyblack.com
                                                         *Attorneys for Plaintiff*

**Address of Plaintiff:**
2525 South Delaware Street
Denver, CO 80223

14